**IN THE COURT OF APPEALS OF IOWA**

No. 19-1567
Filed February 5, 2020

**IN THE INTEREST OF K.K.-C.,**
**Minor Child,**

**K.C., Mother,**
    Appellant,

**B.K., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Korie Shippee, District Associate Judge.

A mother and father separately appeal from the terminations of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Jean Capdevila, Davenport, for appellant mother.

G. Brian Weiler, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Joshua T. Cobie of Brubaker, Flynn & Darland, P.C., Davenport, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**MULLINS, Judge.**

A mother and father separately appeal from the terminations of their parental rights to K.K.-C, born in 2009. The mother argues termination is not in the best interests of the child. The father argues termination was inappropriate because his actions did not lead to initial child-in-need-of-assistance (CINA) adjudication, he presented no risk of harm, he substantially complied with expectations of the Department of Human Services (DHS), and DHS failed to make reasonable efforts at reunification.

## I. Background Facts and Proceedings

The child came to the attention of DHS in 2017 upon allegations of the mother's drug use, inappropriate supervision of the child, and unsanitary residence.[1] The mother admitted to marijuana use. The child was adjudicated CINA in October pursuant to Iowa Code section 232.2(6)(b), (c)(2), (g), and (n) (2017). Following adjudication, the mother repeatedly changed residences, and allegations of drug use and inappropriate supervision continued. The child was removed from the mother's custody and placed in foster care in November 2017, following the mother's arrest for possession of methamphetamine and failure to comply with drug testing. The child has remained in the same placement since then. A hair sample taken from the child in December tested positive for methamphetamine.

---

[1] This is not the first time the family has been involved with DHS. The child tested positive for marijuana at birth, was the subject of a founded assessment for failure to provide adequate supervision in 2011, and was again the subject of a founded assessment for the "mother's substance abuse and allowing improper supervision by allowing access to the child by a registered sex offender" in 2013.

Throughout the course of proceedings, the child disclosed a number of concerns related to the mother's housing: "[bites from] fleas or bedbugs, being threatened, being scared of being shot, [and] not having water in the home in which [the child] was residing." While in the mother's custody the child had inconsistent school attendance.

The mother failed to engage in visitation so often that she was required to confirm visits by 7:00 a.m. on the day visitation was to take place. On multiple occasions, the mother failed to confirm on time. Although the mother was able to engage in age-appropriate conversation and activities with the child and began to regularly attend visits, the child expressed fear one of his parents may attempt to abscond with him. When conflict arose during visits, the mother was unable to calm the child and a family safety, risk, and permanency (FSRP) worker testified about an occasion in which the mother swore at the child out of frustration. At no time did the mother secure appropriate housing for herself and the child.

The mother served a jail sentence beginning in November 2018 and lasting into early 2019. The mother tested positive for methamphetamine in January 2019. She then obtained a new substance-abuse evaluation and completed outpatient treatment in March. When DHS requested drug testing, the mother refused due to her work schedule. The mother testified she again completed treatment in July. At the time of the termination proceedings, the mother had been evasive about her residential address for months but was currently residing with an aunt who refused DHS involvement. At the termination hearing, the mother insisted she could obtain immediate housing for herself and the child at a shelter, but she had no definite arrangements.

The putative father, who was listed on the child's birth certificate but suspected he was not the child's biological father, was incarcerated at the time of adjudication. The juvenile court ordered paternity testing immediately upon the child's CINA adjudication in October 2017. However, testing was not completed until September 2018. Results confirming the putative father's paternity were not received until November of the same year. The father was paroled in August 2018 and released from incarceration into work-release housing. At the October 2018 permanency hearing, the juvenile court found DHS failed to provide reasonable efforts to the father. The court expressed concern about the delay in paternity testing, the father's involvement in the child's life prior to his incarceration, and his reluctance to engage in services prior to confirmation of a biological relationship to the child. The father missed more than one visit due to punishment received when he failed to comply with the rules of his work-release housing. The court granted the father an extra six months to work toward reunification.

Eventually, the father was released from the work-release program and obtained employment and his own housing. During the six-month extension, the father missed visits due to forgetfulness and admitted to the court he was not ready for visits to take place in his home. The father discussed his prior work-release rule violations, alleged criminal activity, and other inappropriate topics during visits, and he consistently engaged in roughhousing with the child. The court found the father's parenting skills were still deficient.

Prior to the termination hearing, the child experienced severe anxiety related to visits with the parents. The child expressed feeling unsafe around the

biological parents but safe in the foster placement, which was available to the child as an adoptive placement.

A termination hearing was held in August 2019. The court found the following:

> [The child] has been out of [the child's parents'] homes for the last 21 consecutive months with no returns home. The child was adjudicated because of parental substance abuse, inadequate supervision and unsafe housing. The parents were offered services to correct the circumstances that lead to adjudication but those circumstances continue to exist. The court is convinced that further services would not result in reunification. Neither parent is able to assume custody presently or within a reasonable amount of time.

The parental rights of both parents were terminated pursuant to Iowa Code section 232.116(1)(d) and (f) (2019). The parents separately appeal.

## II.     Standard of Review

Terminations of parental rights are reviewed de novo. *In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010). We give weight to the juvenile court's factual findings, particularly regarding witness credibility. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Grounds for termination must be established by clear and convincing evidence. *Id.*

## III.     Analysis

Review of termination of parental rights involves a three-step analysis. *See P.L.*, 778 N.W. at 40–41. First, a court must determine whether a ground for termination has been proved pursuant to Iowa Code section 232.116(1). *Id.* at 40. Second, a court must consider the factors presented in section 232.116(2), giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and

emotional condition and needs of the child." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40. Finally, a court must determine whether any permissive statutory exceptions should be applied pursuant to section 232.116(3). *P.L.*, 778 N.W.2d at 41.

A.     Mother

The mother argues solely that termination of her parental rights is not in the child's best interests. The mother does not contest the grounds for termination on appeal. Thus, we may bypass step one of the three-step termination analysis. *See id.* at 40. When considering whether termination of parental rights is in a child's best interests we are guided by the factors listed in section 232.116(2).

At this time, the child is more than ten years old and has been subjected to multiple DHS interventions in the family. The child has been in one consistent foster placement since removal from the mother's care. The child has grown to feel safe with the foster family and is also bonded with the family's two dogs, calling them siblings. The child has expressed to providers a feeling of safety with the foster family and wishes to be adopted by the family. The child's mental and emotional growth is challenged during periods leading to and following visitation with the parents. The child has had consistent school attendance and has become involved in recreational activities since placement in the foster home. The child has expressed a feeling of love toward his mother and a desire to maintain contact with her, but the child has also expressed fear of continued abuse if placed in her care. The child does not feel safe when in the mother's presence.

We commend the mother for completing substance-abuse treatment and maintaining sobriety. However, her living situation has been in constant upheaval

and was one of the concerns leading to adjudication. At the time of the termination hearing, the mother was residing with an aunt who would not allow DHS involvement in the home. The mother's plan was to take the child into a homeless shelter, a placement she had not yet secured for herself. We cannot say placement with the mother in a homeless shelter would best provide for the child's safety, long-term growth, or the "physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Because of the mother's own housing limitations, she never advanced to the point she could exercise home visits with the child. At the time of the termination hearing, the child had been in the care of the foster family for twenty-one consecutive months, felt safe in that home, and wished to be adopted. We cannot force the child to wait in hopes that the mother will secure safe and stable housing. *In re Dameron*, 306 N.W.2d 743, 747 (Iowa 1981).

Our review of the statutory exceptions to termination reveals that only one could be applicable. *See* Iowa Code § 232.116(3). The court may decide not to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). The record is clear that the mother and child share an emotional bond. The child expressed a desire to maintain a relationship with the mother. However, the child is old enough to understand that being adopted by the foster family would mean an end to his relationship with his mother, and he still maintains his preference for adoption. The child's physical and emotional condition have improved since removal from the mother's care. Although the mother and child share a bond, we cannot say it is so

close that termination would be detrimental to the child. Accordingly, we affirm the termination of the mother's parental rights.

B. Father

The father raises a number of issues with the juvenile court's order terminating his parental rights. He challenges termination pursuant to section 232.116(1)(d) and (f). Accordingly, we must begin our analysis as to the father's parental rights with consideration of the statutory grounds for termination. *P.L.*, 448 N.W.2d at 40. We need only find one ground for termination to affirm the juvenile court. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).

In order to terminate parental rights pursuant to section 232.116(1)(f), the State must prove all four elements. Iowa Code § 232.116(1)(f).

Parental rights to a child may be terminated if:

f. The court finds that all of the following have occurred:
    (1) The child is four years of age or older.
    (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months . . . .
    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

*Id.* The father argues the State failed to prove by clear and convincing evidence the child could not be returned to his custody. *See* Iowa Code § 232.116(1)(f)(4).

As to the fourth element, a child cannot be returned to the custody of the child's parents under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or would remain a child in need of assistance. We have interpreted this to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing.

*In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017) (citations omitted).

The DHS worker testified at the termination hearing that the visitation supervisor had not yet visited the father's residence to determine whether it would be a safe placement for the child because the father had not requested in-home visits. However, the DHS worker also testified the father had generally complied with DHS recommendations. The record reveals the father had a very short history with the child, still needed to complete parole, and was still building basic parenting skills. Furthermore, nothing in the record suggests the father ever requested in-home visits, let alone requested that the child live in his home.[2] During supervised visits, the father has engaged in roughhousing with the child, which has led to minor injury and repeated intervention by supervisors. A case plan dated August 12, 2019, states the father threatened to use physical discipline with the child. The father argues it was impossible for the child to be removed from his care because the child never lived with him. As we have previously explained, under circumstances such as these removal from one parent is "sufficient to support termination of the [other parent]'s parental rights." *In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *3 (Iowa Ct. App. Mar. 22, 2017). Following the analysis of our prior decision, "because the child ha[s] been removed from the mother's care for the requisite period of time, we conclude it [is] not necessary for the state to prove the child was removed from the father's care." *Id.* at *4. We agree with the juvenile

---

[2] The record does show the father discussed the possibility of the child living with him during visits, but it appears no formal request for a transfer was ever made.

court's findings there is clear and convincing evidence that the child could not be returned to the father's custody at the time of the termination hearing.

Analysis of whether termination is in the best interests of the child must follow. *P.L.*, 778 N.W.2d at 40. Here, we again note the child's advanced age, consistent foster placement, emotional growth, and desire to be adopted by the foster family. Like the child's relationship to the mother, the child feels unsafe in the father's presence. Although the father has obtained consistent employment and housing since completing his most recent sentence, the father has just begun to engage in a relationship with the child and build appropriate parenting skills. The father has needed consistent redirection from visitation supervisors regarding appropriate discussion topics and roughhousing. We appreciate the father's commitment to engagement in the child's life since confirming his paternity, but the facts show placement with the father will not provide for the "physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Again, we cannot ask the child to wait continuously for the father to build the skills necessary to be a parent. *Dameron*, 306 N.W.2d at 747.

Finally, we examine the statutory exceptions to termination. *P.L.*, 778 N.W.2d at 41. Like the mother's situation, the only exception that could apply is if there is clear and convincing evidence that termination would be detrimental to the child due to the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(c). The record shows the father is in the process of building a relationship with the child. The father and child are still getting to know each other, and the child's consistent preference has been for termination and adoption by the foster family. Although the record shows a bond between the father and child has

begun to form, it is not a bond so close that termination would be detrimental to the child. *See id.* Thus, we find no statutory exception to termination is applicable in this situation.

We now turn to the father's argument DHS failed to make reasonable efforts toward reunification by failing to create a new case plan for the father and refusing to progress visits while termination proceedings were pending. Reasonable efforts are considered as a "scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *C.B.*, 611 N.W.2d at 493. "A child's health and safety shall be the paramount concern in making reasonable efforts." Iowa Code § 232.102(12)(a). The father has been offered visitation, FSRP services, a psychological evaluation and treatment, and substance-abuse services among other services. The father was offered services prior to the paternity test but refused, preferring to wait until after the paternity confirmation. The court found DHS had not provided reasonable efforts to the father in late 2018, ordering that a case plan be developed to identify his objectives and goals.[3] In the following months, the father engaged in visitation but refused mental-health services. The father engaged in drug testing through his parole program and reported consistent attendance at both alcoholics and narcotics anonymous meetings two times per

---

[3] In a May 2019 motion filed pursuant to Iowa Rule of Civil Procedure 1.904, the father alleged no case plan was filed referencing goals or objectives for him until April 2019. However, our review of the record reveals the plan developed November 8, 2018, listed steps with which the father needed to comply. The court's permanency order, filed November 26, 2018, insists a new case plan be developed including the father. The November 8 case plan was not filed with the court until December 3, 2018, in satisfaction of the court's November 26 order.

week.  The father consistently refused any mental-health intervention.  From the record presented, it is clear that reasonable efforts have been provided.

**IV.      Conclusion**

Based on our de novo review of the record we affirm the separate appeals of the terminations of the mother's and father's parental rights to the child.

**AFFIRMED ON BOTH APPEALS.**